IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

FILED
JUN 2 0 2002
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA

| | |
|---|---|
| WILLIAM BIRCHFIELD, | ) |
| Plaintiff, | ) |
| v. | ) Case No.: CV-01-PT-3144-E |
| SUPERVALU, INC., et al., | ) |
| Defendants. | ) |

ENTERED
JUN 2 0 2002

## MEMORANDUM OPINION

This causes comes to be heard on defendant SuperValu, Inc.'s ("SuperValu") Motion for Summary Judgment filed on May 14, 2002.

### FACTS

SuperValu is a food warehouse located in Anniston, Alabama. It has a break room for its employees on the second floor of the warehouse. The employees access the break room by climbing a single flight of stairs. The employees have access to vending machines that are located in the break room.

SuperValu contracted with Five Star Food Service ("Five Star") to provide products in the vending machines in the break room. Five Star and its predecessor, Special Services Company ("Special Services"), had been providing these products to SuperValu for several years.

Melody Shumaker ("Shumaker") serviced the vending machines at SuperValu, initially as an employee of Special Services, and then as an employee of Five Star. When she began working for Special Services in 1992 or 1993, she was informed by her boss that SuperValu did not want hand trucks used on the stairs leading to the break room to deliver supplies. She was

also informed of this request by a member of the janitorial staff of SuperValu.[1] In accordance with SuperValu's request, Shumaker carried her deliveries up the stairs by hand. After Special Services was purchased by Five Star, Shumaker informed management at Five Star that hand trucks could not be used on the stairs leading to the break room at the SuperValu warehouse.

In April of 2000, Five Star subcontracted with the Coca-Cola Company ("Coca-Cola") to provide 20-ounce bottle drinks to the vending machines in the break room. Apparently, the subcontract was based on a verbal agreement between the two companies. Dennis Noah ("Noah"), operations manager at Five Star, discussed the oral agreement with Coca-Cola employee David Bryant ("Bryant"). According to Noah, he informed Bryant that Coca-Cola's employees would have to "tote" the product up the stairs at SuperValu. Noah did not specifically mention the use of hand trucks in this conversation. According to Bryant, the only specific instructions he remembers Five Star providing concerning the SuperValu account were the ones listed on the "equipment move order": 20 ounce bottles, 72 inch vendor, agreed dollar in 40 percent commission with approved brands to place in the machine. SuperValu was unaware that Five Star had entered into this subcontract with Coca-Cola.

On April 28, 2000, one of the maintenance workers of SuperValu replaced one of the rubber treads on a step on the stairway leading up to the break room. The rubber tread was replaced at approximately 6:00 A.M. The maintenance worker used an Envirotec adhesive to glue the rubber tread to the stair.[2] After this repair, Paul Smith, "work leader" in the

---

[1] This testimony is consistent with the affidavit testimony of Forrest Mahan. Mr. Mahan was the former maintenance supervisor at SuperValu in Anniston. According to Mahan, he informed Special Services and Five Star that SuperValu did not allow hand trucks to be pulled up the stairs to the break room. Mahan indicated that Shumaker always carried her deliveries up the stairs by hand.

[2] The can of Enviortec adhesive had instructions on it. However, the instructions did not indicate any specific drying time needed to make travel on the the rubber tread safe.

2

maintenance department, inspected the work. Smith tried to move the rubber tread with his foot. According to Smith, the rubber tread did not move. The maintenance department did not place any signs or notices on the stairwell informing individuals of the recent repair.

The plaintiff, William Birchfield ("Birchfield"), began delivering Coke products to the SuperValu warehouse on April 28, 2000. Prior to this date, Birchfield did not talk to or receive instructions from anyone at Coca-Cola, Five Star, or SuperValu about the method or procedure to be used when making deliveries to the SuperValu warehouse. There was no sign on the stairwell informing vendors that hand trucks were prohibited.

When Birchfield arrived at SuperValu, he located the break room and went up the stairs to inspect the machine he would be stocking. While in the break room, he asked Five Star employee Shawn Mason how he was supposed to get the product up into the break room. Mason replied, "Just up the steps." He then returned to his truck, loaded four cases of 20-ounce Coke bottles on a hand truck, and began to back the hand truck up the stairs. Birchfield reached the fourth or fifth step when the rubber tread came loose causing him to fall flat on his back. The rubber tread that came loose was the same tread that had been glued on the stair earlier that morning. Prior to the fall, Birchfield could not tell from looking at the step that it had been reglued. After the fall, he noticed that he had wet glue all over his backside. He also noticed wet glue on one of his hands. According to Birchfield, the glue soaked through his pants and underwear. No employees of SuperValu had advised Birchfield that the rubber tread had been reglued that morning.

On November 6, 2001, Birchfield filed a civil action against SuperValu in the Circuit Court of Calhoun County, Alabama. In his complaint Birchfield alleged that SuperValu "negligently and/or wantonly caused, permitted, allowed or created the dangerous condition to

3

exist on said premises to wit failing to give notice that stair riser in question had recently been glued and had not yet set and was not secure for travel." On December 7, 2001, SuperValu removed the civil action to this court pursuant to 28 U.S.C. § 1332. On May 14, 2002, SuperValu filed the present motion under consideration.

## ARGUMENTS

SuperValu argues that it is entitled to summary judgment because no evidence has been presented that it breached its duty of care to Birchfield. According to SuperValu, Alabama law is that a warning to a contractor is equivalent to a warning to the subcontractor and the subcontractor's employees. Thus, it states that its notice to Five Star that hand trucks were prohibited on the stairs is equivalent to notice to Coca-Cola and Birchfield. SuperValu relies on *Meadowcraft Industries, Inc. v. Price*, No. 1000134, 2001 WL 1073589 (Ala. Sept. 14, 2001), to support this proposition. According to SuperValu, Meadowcraft, a furniture manufacturer, contracted with another company to install a new conveyor belt. Meadowcraft then warned its independent contractor not to allow its employees to climb on the conveyor belt. The independent contractor subcontracted some of the conveyor belt work. One of the subcontractor's employees climbed on the conveyor belt and was injured. After receiving a jury verdict for $60,000, the Alabama Supreme Court reversed, holding that the trial court improperly denied Meadowcraft's motion for summary judgment. In reaching this conclusion, the court quoted from its opinion in *Crawford Johnson & Co. v. Duffner*, 189 So. 2d 474, 478 (1966):

> [A] premises owner owes no duty to warn an independent contractor's employees of a danger once the independent contractor is aware of that danger; "it was the duty of plaintiff's employer to warn plaintiff of the hazard or to take reasonable steps, commensurate with the circumstances, to guard against injury to plaintiff from such a hazard."

*Meadowcraft*, 2001 WL 1073589 at *5.

4

In light of the holdings in *Meadowcraft* and *Duffner*, SuperValu argues that it did not breach its duty to warn. It asserts that it informed Five Star that hand trucks were not allowed on the stairs leading to the break room. Additionally, it claims that it could not warn Birchfield because it was unaware that he was coming to its premises. To support this contention, SuperValu notes that it was unaware that Five Star had entered into a subcontract with Birchfield's employer, Coca-Cola. Furthermore, it claims that it did not breach its duty to warn because the stairs were safe for their intended use, foot traffic. SuperValu points out that Birchfield, Five Star, and SuperValu employees had walked up and down the stairs without a problem prior to Birchfield's accident. It contends that the rubber tread was safe for foot traffic based on this activity and the testing of its employee, Paul Smith. Finally, SuperValu asserts that it had no duty to warn generally that the step had been glued because it did not know that the rubber tread would come loose. It notes that the instructions on the adhesive's label did not specify a drying time. Furthermore, its employees had walked on the steps with no problems prior to the accident.

In response, Birchfield argues that SuperValu owed him a duty to warn of the dangerous condition on the stairway. In support of this contention, Birchfield also relies of *Duffner*. According to Birchfield, the Alabama Supreme Court stated the rule of law pertaining to the duty to warn contractors of defects on premises in *Duffner*:

> The owner of [a] premises is not responsible to an independent contractor for injury from defects or dangers which the contractor knows of, or ought to know of. But if the defect or danger is hidden and known to the owner, and neither known to the contractor, nor such as he ought to know, it is the duty of the owner to warn the contractor, and if he does not do this he is liable for resultant injury. The same rule applies to the servants of the contractor, and to the subcontractor and his servants.

*Duffner*, 189 So. 2d at 480. Birchfield claims that SuperValu owed him a duty to warn of the

5

reglued stair. He states that the wet glue on the rubber tread was not readily apparent to him when he walked up the stairs. He points out that no one at SuperValu told him that the rubber tread had been replaced. He notes that there were no signs, cones, tape, or other safety warning devices posted on the stairwell or anywhere on the premises.

Additionally, Birchfield states that he was never informed by anyone at SuperValu, Five Star or Coca-Cola not to use a hand truck on the stairs. He notes that Bryant, Coca-Cola's representative, testified that Five Star never advised Coca-Cola not to use hand trucks. Furthermore, he claims that there is no evidence in the record to demonstrate that SuperValu warned Five Star or Coca-Cola not to use hand trucks on the stairs because it posed a risk of injury or danger to the individual. Instead, Birchfield points out that the affidavit of Paul Smith specifically states that "we had informed Five Star that we did not want hand trucks on the steps because they tear up the treads when they bang into the treads." Thus, he claims that SuperValu only advised Five Star to not use hand trucks to protect its property, not to warn of any personal danger.

Furthermore, Birchfield argues that SuperValu reliance on *Duffner* is misplaced. He contends that the language relied upon by SuperValu actually advances his argument because there is no evidence that Five Star was ever warned of a danger associated with using hand trucks on the stairs and there is no evidence that Five Star was aware of any danger associated with such an act.

Finally, Birchfield argues that he has presented substantial evidence to require the submission of the "duty-to-warn" claim to a jury. According to Birchfield, to submit a "duty-to-warn" claim to a jury, Alabama substantive law requires the plaintiff to "present substantial evidence of three (3) elements: (1) that the defect or danger was 'hidden'; (2) that it was 'known

6

to the owner'; and (3) that it was 'neither known to the contractor, nor such that he ought to know.'" *Meadowcraft*, 2001 WL 1073589 at *3. Birchfield claims the first element has been satisfied because the danger, the wet glue, was hidden under the rubber tread. He contends that the second element has been satisfied because SuperValu knew of the defect because its employees reglued the rubber tread. Finally, he asserts that the third element has been satisfied because there is no evidence that anyone from SuperValu warned Five Star or Coca-Cola about the repaired rubber tread and there was no way he could have known of such repair. Birchfield claims that there are genuine issues as to the material facts pertaining to his knowledge of the dangerous condition of the stairs and to the sufficiency of any notice given to him, by and through any instruction given to the contractor, Five Star, seven years before his fall, about not using hand trucks on the stairs in question. He concludes by stating that in a negligence action against a premises owner, questions of notice are properly left to the jury. *Relying on Williams v. Bruno's Inc.*, 632 So.2d 19 (Ala. 1993).

## SUMMARY JUDGMENT STANDARD

Summary judgment may be granted based upon facts developed during the pleadings, discovery, and supplemental affidavits, etc., if together, they show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-33 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party moving for summary judgment bears the initial burden of explaining the basis of his motion. *Id.* The non-moving party then bears the burden of showing that there are specific facts demonstrating that there is a genuine issue of fact for trial. *Id.* at 324. "When deciding whether summary judgment is appropriate, all evidence

7

and reasonable factual inferences drawn therefrom are reviewed in a light most favorable to the non-moving party." *Korman v. HBC Florida, Inc.*, 182 F.3d 1291, 1293 (11th Cir. 1999). The trial court must resolve all reasonable doubts in favor of the non-moving party, but need not resolve all doubts in a similar fashion. *Barnes v. Southwest Forest Indus., Inc.*, 814 F.2d 607, 609 (11th Cir. 1987).

## CONCLUSIONS OF THE COURT

This is a close case on the law. The court concludes that it should not grant summary judgment, but will certify the case for appeal under 28 U.S.C. § 1292(b).

This ____ day of June 2002.

                                                ROBERT B. PROPST
                                        SENIOR UNITED STATES DISTRICT JUDGE

8